**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALI BAGHDADI et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 20-CV-04043 |
| CHICAGO SOUTH LOOP HOLDINGS III, LLC, | ) | Judge John J. Tharp, Jr. |
| Defendant. | ) | |

**ORDER**

The plaintiffs, fifteen transferees of distributional interests in an Illinois company named MT Holdings, LLC, claim that the defendant, Chicago South Loop Holdings III, LLC ("South Loop III"), wrongfully deprived them of the value of those distributional interests. But, for the reasons explained below, the plaintiffs' distributional interests had no value, so South Loop III did not deprive them of anything. South Loop III's motion for summary judgment is granted, and the plaintiffs' motion for summary judgment is denied. Final judgment will be entered in favor of South Loop III.

**STATEMENT**

## I. Background

MT Holdings was part of a complicated web of corporate entities that had financial interests in an undeveloped 62-acre parcel of land in the South Loop neighborhood of Chicago (the Property). The relationship of those entities is detailed in this Court's earlier order, Mem. Op. 1–10, ECF No. 64, but for the purposes of this motion we can streamline the description. Briefly, an individual named Anton Rezko and former defendant General Mediterranean Holdings, S.A., SPF ("GMH") obtained the Property in the early 2000s, with GMH providing the purchasing capital and funds needed to develop the property—about $134 million. Joint Statement of Facts ("Joint SOF") ¶ 23, ECF No. 105. In return, the company installed as the owner of the Property, Riverside District Development, LLC, promised GMH a preferred return on its investment. *Id.* at 4 ¶ 20, 22.

Riverside was owned by GMH and Heritage Development Partners; each owned 50% of Riverside's common shares, but GMH held 51% of the voting shares. Mem. Op. 3. The Riverside Operating Agreement granted GMH a return of its invested capital in the Property, plus 12% interest per year (compounded annually) on its invested capital balance ("the preferred return"). Joint SOF 4 ¶ 22. Only after satisfaction of the preferred return owed to GMH would any further funds generated by the Property be distributed to any of the other entities, per those other entities' interests in the ownership structure.

MT Holdings was one of the companies that had an interest in the Property. It owned part of Heritage.[1] Mem. Op. 5. Through assignments from Rezko,[2] the plaintiffs owned distributional interests in MT Holdings entitling each of them to their proportionate share of any distributions MT Holdings received from Heritage. *Id.* The plaintiffs' interests in MT Holdings, however, did not entitle them to voting rights or any formal input into MT Holdings' management. Joint SOF 6 ¶¶ 45–46. The plaintiffs were aware that their interests were distributional only, and also that those interests were, at the time the plaintiffs received them, subordinate to the priority return due to GMH. Joint SOF 6 ¶ 47.

The matter of distributions from the property, however, was largely academic, because the Property remained undeveloped and generated no revenue. Meanwhile, the preferred return credit kept growing. By 2013, GMH's preferred return was worth far more than the value of the Property. Joint SOF, Ex. 18, at 3, ECF No. 105-19 (GMH "is entitled to a distribution of at least $365 million from Riverside before any other member of Riverside is entitled to any distribution"). GMH therefore decided to liquidate Riverside and simplify the ownership structure of the Property.

To reflect its sole ownership, on April 28, 2014, GMH vested title to the Property in a new entity, Chicago South Loop Holdings II. Ex. 18 (restructuring intended by GMH "to obtain sole title to the Property"). This restructuring was approved by Riverside, Heritage, and MT, each of which provided written consent to their liquidation in the restructuring.[3] Joint SOF, Exs. 16, 17, 19, ECF Nos. 105-17, 105-18. The consents confirmed that GMH's right to a preferred return was worth far more than the value of the property, leaving their prior financial interests in the Property worthless. JSOF Ex. 18, ECF No. 105-19 at 97 (acknowledging that MT Holdings' "sole asset, which is its beneficial interest in the Property, will become worthless upon the Riverside Liquidation because the fair market value of the Property currently and in the foreseeable future is less than the full amount of the Unpaid Preferred Return Balance"). Riverside was formally dissolved on May 5, 2014. Joint SOF 4 ¶ 27. Heritage and MT Holdings were dissolved on May 7 and 8, respectively. *Id.* at 5 ¶ 33; *id.* at 6 ¶ 40.

Which brings us to the central issue in this case. Although Heritage was not entitled to any preferred return, Section 7.2 of its Operating Agreement provided an option for any Member of Heritage (*i.e.*, MT Holdings) to acquire "an interest" in South Loop II—the GMH subsidiary to which the Property was transferred during the restructuring. The Court previously found that while the plaintiffs could not base a claim on MT Holdings' failure to exercise the option (because Section 8.5 of the MT Operating Agreement denies distributional interest holders any right to

---

[1] MT Holdings held 38.1% of the voting units of Heritage. Joint SOF 5 ¶ 30.

[2] In 2006, the federal government indicted Rezko for reasons unrelated to this case. Mem. Op. 4. As part of the buy-out process, Rezko gave the plaintiffs nonmember units in MT Holdings, which they retained through the dissolution of MT Holdings on May 8, 2014.

[3] MT Holdings' only member was South Loop III, which agreed to MT Holdings' dissolution, recognizing that MT Holdings' interest in the Property was dwarfed by GMH's preferred return. Joint SOF, Ex. 19, at 5, ECF No. 105-20.

complain of management action or inaction),[4] they might have a claim under Section 10.2 of the MT Operating Agreement based on the failure to sell that option in connection with the dissolution and to distribute the requisite share of the proceeds of that sale to the plaintiffs. In the order partially denying the defendants' motion to dismiss, the Court held that "the plaintiffs plausibly allege that the option to obtain an ownership interest in South Loop II was an asset of MT Holdings that had value but was not liquidated, thereby depriving them of their share of the company's assets on dissolution." Mem. Op. 22. But the Court also recognized that whether the "right to obtain an interest in South Loop II had [any] value due to its subordination to the preferred interest of GMH in South Loop II" was a question that the defendants would have to raise on summary judgment or at trial. *Id.* at 23.

Hence the parties' cross motions. Whether the right to obtain an ownership interest in South Loop II had any value and therefore should have been liquidated is the only issue presented by the parties' respective motions for summary judgment.[5]

## II. Discussion

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which directs courts to grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the nonmovant bears the burden of proof at trial, it must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). A genuine issue exists when "a reasonable jury could return a verdict for the non-moving party." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022)). Thus, on reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the nonmovant. *Weaver*, 28 F.4th at 820.

The plaintiffs' remaining claim rests on the premise that their distributional interests derived value from MT Holdings' option to obtain a comparable distributional interest in South Loop II. Pls.' Mot. Summ. J. 4, ECF No. 101. The MT Holdings operating agreement required South Loop III, as its only member, to "dispose of all other Company properties and assets at the

---

[4] "To the extent that the plaintiffs' theory is premised on the failure of MT Holdings to exercise that option (or, more accurately, on South Loop III's failure to cause MT Holdings to exercise that option) prior to dissolution of MT Holdings, that is a beef with the management of MT Holdings and as such is barred by the operating agreement and the LLC Act." ECF No. 64 at 20-21.

[5] The plaintiffs filed suit against GMH for tortious interference and South Loop III for breach of fiduciary duty, statutory violations, breach of contract, and tortious interference. *Id.* at 10. Both defendants moved to dismiss, and this Court granted GMH's motion. The Court also noted that the plaintiffs' breach of fiduciary duty and tortious interference theories against South Loop III failed as a matter of law, leaving the plaintiffs with only their claim that MT Holdings should have liquidated its asset—an option to obtain an ownership interest in South Loop II—and distributed part of the proceeds to the plaintiffs, pursuant to MT Holdings' operating agreement. *Id.* at 22–24.

best cash price obtainable therefor under the circumstances." Mem. Op. 22 (citing Section 10.2.1 of MT Holdings' operating agreement). The plaintiffs therefore argue that the failure to sell the option and distribute a share of the company's assets upon dissolution was a violation of Section 30-10 of the Illinois Limited Liability Company Act,[6] 805 Ill. Comp. Stat. § 180/30-10(e) (West 2026) (providing that holders of distribution interests are entitled to receive "distributions to which the transferor would otherwise be entitled," including the amount due to the transferor "upon dissolution and winding up of the limited liability company's business"), or a breach of contract.

South Loop III counters that the plaintiffs are unable to prove they suffered damages. All the plaintiffs had was an option to acquire a distributional interest in an entity that had no economic value at the time of MT's 2014 dissolution, because any interest that might have been obtained through its exercise was subordinate to the priority return owed to GMH. Def.'s Mot. Summ. J. 10–15, ECF No. 104. The plaintiffs' interests were expressly subject to any preferred interest rights, Joint SOF ¶ 49, and the parties agree that before May 8, 2014—the day MT Holdings dissolved—any preferred return due to GMH was significantly higher than the value of the Property. *Id.* at 8 ¶ 54.

The plaintiffs, however, argue that GMH's preferred return no longer existed at the moment MT Holdings was dissolved. Because Riverside was dissolved three days before MT Holdings, and GMH's preferred return only existed in the Riverside operating agreement, the plaintiffs contend that the preferred return was extinguished prior to MT Holdings' dissolution. Pl.'s Mot. Summ. J. 6. South Loop II, the entity that owned the property after Riverside, did not have any agreement to provide GMH with a preferred return. Pl.'s Statement of Facts 1 ¶ 3, ECF No. 102.[7] Absent the preferred return, the plaintiffs contend that the option was not underwater and therefore had value commensurate with the market value of the Property. The plaintiffs calculate the value of their collective distributional interests at $16,430,598, based on the expert opinion of Andrew Lines, who conducted a retrospective evaluation and concluded that the market value of the Property was approximately $246,400,000 when Riverside was dissolved. Pl.'s Mot. Summ. J. Resp. 5, ECF No. 110; Def.'s Mot. Summ. J. 9. The plaintiffs claim they are each entitled to their proportionate share of that amount. Pl.'s Mot. Summ. J. 5.

The plaintiffs' reliance on Mr. Line's assessment of the Property's market value is misplaced and based on a false equivalence. The defendants do not dispute that the market value of the Property was in the neighborhood of $250 million; indeed, some of the evidence provided by the defendants suggests that the Property was worth even more, perhaps as much as $280 million. But the question at issue is not what the market value of the Property was. The question is whether the right provided by Section 7.2 of the Heritage Operating Agreement had any economic value. More specifically, the question is whether the plaintiffs, whose burden it is to

[6] The plaintiffs also continue to argue that the failure to give them prior notice of MT Holdings' dissolution violated the operating agreement and is actionable. Pl.'s Mot. Summ. J. 4. But, as this Court has already explained, the plaintiffs had "no right to any information or accounting of the affairs of the Company." Mem. Op. 20–21 (citing Sections 1.8 and 8.5 of MT Holdings' operating agreement).

[7] South Loop III did not respond to the plaintiffs' statement of facts, so they are deemed admitted. LR 56.1(e)(3); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2005).

adduce enough evidence to support a jury verdict finding that they were damaged by failing to liquidate the Section 7.2 option provided by the Heritage operating agreement, have done so.

The answer is no. The plaintiffs have presented no evidence to show that MT Holdings could have liquidated its rights under Section 7.2 for any amount, much less for their proportionate share of the Property's market value. Certainly, Mr. Lines provided no such evidence. To the contrary, Mr. Lines testified that he was unaware of Section 7.2 and expressly confirmed that he was presenting no opinion as to "whether or not any contractual rights contained in any of these Operating Agreements had any economic value at any point in time." Lines Dep., Ex. 32, at 19:3–24:19, ECF No. 105-33; Joint SOF 9 ¶ 56.

As for the three days between the dissolution of Riverside and MT Holdings, the plaintiffs speculate that during that window of opportunity, MT Holdings could have quickly liquidated the Section 7.2 rights unburdened with the guaranteed capital account component of the preferred return and allowing the purchase of the contract rights for something akin to market value. This is sophistry. For starters, the suggestion that the defendants could have, in the span of a few days, discovered and exploited a $200 million loophole by finding buyers prepared to pay them for the right to receive distributions from an undeveloped property that was wholly owned by a company that had invested some $400 million without receiving any return is fanciful. The plaintiffs have adduced no evidence to support an argument that such a surprise liquidation was remotely possible.

More importantly, the plaintiffs simply ignore the fact that, before Riverside, Heritage, and MT Holdings formally dissolved, the companies had already agreed, in written Consents, that their interests in the Property were hopelessly underwater, that as a consequence GMH had the right to restructure the ownership of the Property, and that it had done so by vesting title to the Property in South Loop II. By virtue of the restructuring, GMH had full and direct control of the Property. There was no reason for GMH to include a provision in South Loop II's operating agreement regarding its preferred return, because every company involved (including MT Holdings itself) had already acknowledged and agreed that GMH was due a preferred return in an amount greater than the Property's worth. That was the reason for the restructuring, and without the Consents of both Heritage and MT Holdings, the restructuring would not have gone forward.

* * *

Because the plaintiffs bear the burden of proof at trial, they must point to evidence sufficient to allow a reasonable jury to conclude that they were injured by South Loop III's failure to liquidate the Section 7.2 option. They present no evidence that the option had any economic value, however, so there is no genuine dispute over whether the plaintiffs were owed money upon MT Holdings' dissolution. Accordingly, the plaintiffs' motion for summary judgment is denied, and South Loop III's motion is granted.

Dated: September 28, 2026

John J. Tharp, Jr.
United States District Judge